UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARMAINE DAVIS | Case No. 19-cv-2611 |
| Plaintiff, | |
| -vs- | **COMPLAINT** |
| CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT ("NYPD") OFFICER JOSEPH GRUBERT Shield No. 17450; NYPD OFFICER BRETT ALLEN Shield No. 18907; NYPD DETECTIVE JASON CAPUTO Shield No. 06179, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS NEW YORK CITY POLICE OFFICERS, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, by and through her undersigned attorney, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of her civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

2.      The Court has jurisdiction over Plaintiff's federal law claims under 28 U.S.C §§ 1331, 1343(a), (3), and (4).

## JURY TRIAL DEMANDED

3.       Plaintiff demands trial by jury of all issues properly triable thereby.

-1-

**VENUE**

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

**THE PARTIES**

5.      Plaintiff Charmaine Davis is a United States citizen and resident of New York County, in the City and State of New York.

6.      That at all times herein mentioned, Defendant CITY OF NEW YORK (hereinafter "CITY") was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

7.      That at all times herein mentioned, Defendant CITY operated, controlled and maintained a police force known as the New York Police Department ("hereinafter "NYPD").

8.      That at all times herein mentioned, defendant Officer Joseph Grubert (hereinafter, "GRUBERT") was and is an NYPD officer employed by defendant CITY.

9.   That at all times herein mentioned, Defendant GRUBERT was acting within the course and scope of his employment with defendant CITY.

10.      That at all times herein mentioned, Defendant GRUBERT was acting under color of state law.

11.      Defendant GRUBERT is sued herein in both his individual and official capacities.

12.      That at all times herein mentioned, Defendant Officer Brett Allen (hereinafter, "ALLEN") was and is an NYPD officer employed by defendant CITY.

13.     That at all times herein mentioned, Defendant ALLEN was acting within the course and scope of his employment with Defendant CITY.

14.     That at all times herein mentioned, Defendant ALLEN was acting under color of state law.

15.     Defendant ALLEN is sued herein in both his individual and official capacities.

16.     That at all times herein mentioned, Defendant Detective Jason Caputo (hereinafter, "CAPUTO") was and is an NYPD officer employed by defendant CITY.

17.     That at all times herein mentioned, Defendant CAPUTO was acting within the course and scope of her employment with defendant CITY.

18.     That at all times herein mentioned, defendant CAPUTO was acting under color of state law.

19.     Defendant CAPUTO is sued herein in both her individual and official capacities.

20.     At all relevant times herein, the individual Defendants acted jointly and in concert with each other.

21.     Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual Defendants, but each individual defendant failed and refused to perform such duty, thereby proximately causing Plaintiffs' injuries.

## STATEMENT OF FACTS

22.     Plaintiff Charmaine Davis was a child- 17 years old- at the time of the four following incidents.

23.     She was her mother's  and younger brother's care taker.  Her mother is mostly illiterate.  Her responsibilities at home included watching her brother and taking care of household chores and processes, including assisting in paying bills and maintaining the home.

24.     Plaintiff attended North Queens Community High School as a junior. She was often awarded outstanding character certificates for both her attitude and her high grades.

25.     Plaintiff has no criminal record.

26.     On December 2016, she was living with her mother and 9 year old brother in a two family home 88-37 211th Street, County of Queens, State of New York.  Plaintiff and her family occupied the second floor residence  Her uncle, Shawn Davis resided in the first floor residence.

27.     Her uncle had been taking money from her family for the maintenance of the house.  Her family later learned Mr. Davis was not using this money for its intended purpose of maintaining the house.  This started to cause friction between her and her much older uncle who had surveillance cameras all over the grounds of the home.  After much turmoil, including pressure from the many responsibilities she had, Plaintiff began to developing mental health issues in December of 2016.

28.     During this time Plaintiff began exhibiting suicidal ideations, culminating in telling her mother she wanted to kill herself.  Her mother immediately called 911 and several officers from the 105th precinct responded.

29.     Defendant City had not yet implemented a mental health response team, or alternative to 911 number to respond to mental health crisis calls. NYPD officers, with little or no training for dealing with people undergoing mental health crises were sent.

-4-

30.     The NYPD officers responded to the home and witnessed Plaintiff undergoing a mental health crisis.

31.     The EMT arrived and took Plaintiff to Long Island Jewish Hospital in Long Island City.

32.     Following this incident Plaintiff was admitted to Long Island Jewish Hospital for two weeks.  During which time she was diagnosed with the mental health condition, Bipolar Disorder and Depression, and began receiving mental health treatment.

33.     Bipolar Disorder is a mental illness that affects about 2.6 million Americans.

34.     According to the National Alliance on Mental Illness, Approximately 1 in 5 youth aged 13–18 (21.4%) experiences a severe mental disorder at some point during their life.

35.     After two long weeks at the hospital, Plaintiff returned home a few days after Christmas in December of 2016.

36.     Approximately five months later, on May 1, 2017, Plaintiff and Mr. Davis had an argument regarding the finances of the house, as well as his failure to use the money to provide heat and maintain other habitable living conditions for the house.  Following the argument Mr. Davis called 911 and police officers from the 105th precinct again responded.

37.     When Police Officers arrived, Plaintiff was alarmed that she would have to go back to the Hospital.  The officers spoke to Plaintiff and her uncle, Mr. Davis.  Without any explanation the officer's accepted Mr. Davis's false version of events and rejected Plaintiff's truthful statement.

38.     Mr. Davis  told the officers that Plaintiff had threatened him, that she was crazy, and had been "locked up in a psych ward".  Notably, Mr. Davis informed the officers that Plaintiff had been diagnosed with bipolar disorder and depression.

39.     Plaintiff's mother and boyfriend confirmed for the officers that Plaintiff had been diagnosed with a mental health condition. They also corroborated Plaintiff's version of the events that transpired prior to the police arriving, specifically that it was Mr. Davis that had been provoking and threatening Plaintiff.

40.     In addition, while the officers were present when Mr. Davis spit on  Plaintiff's face (which is a crime that was committed in the Officers presence, and Patrol Guide 208-36 directs Officers to arrest), they did not take any action against Mr. Davis.

41.     Plaintiff became very upset and started screaming about what her uncle had just done. She began to question why the police were not doing anything to him, but  instead, through their inaction toward Mr. Davis and actions taken against her, were condoning his conduct.

42.     After being harassed, threatened, and spit on in the presence of the officers, Plaintiff, a child, was then handcuffed and ordered into a police vehicle by the same officers.

43.     It is believed that Officers upon hearing about her past visit to the "psych ward" and her diagnosis of mental illness decided that Plaintiff was mentally ill or "crazy". As is the policy and custom of the NYPD, they improperly and unlawfully designated her an EDP (Emotionally Disturbed Person). In furtherance of that NYPD policy and custom, codified in Patrol Guide 221-13, the officers falsely believed they had authority to take EDPs into custody, despite the otherwise lawful behavior of the EDP.  NYPD officers then often

unlawfully cite EDPs for some other offense (usually disorderly conduct, or resisting arrest) even if they are not a threat to themselves or anyone else.

44.    Knowing that Plaintiff was an EDP, officers should have called officers to the scene who had been trained in the NYPD's Crisis Intervention Training, so that trained officers could have interacted with Plaintiff and defused the situation.

45.    Instead, while Plaintiff was handcuffed and in the police car, John Doe and Jane Doe Defendant Officers purposely slammed the car door on her shin, causing bruising and bleeding.

46.    At Central Booking, Plaintiff was taken to Queens Hospital to receive medical treatment to the bruising and bleeding on her shin caused by the John Doe and Jane Doe Defendant Officers slamming the door on her leg.

47.    Charmaine Davis, a 17 year old minor, was told by NYPD officers picking her up from the Queens Hospital that since she is mentally ill, she cannot go back to Central Booking, but has to go to the Precinct until she was ready to be arraigned.

48.    Plaintiff was transported back to the Precinct. She was finally arraigned 18 hours later in Queens County Criminal Court.

49.    On May 2, 2017, Ms. Davis was charged in Criminal Court of the City of New York, Queens County, under Docket No. CR-017378-17QN.

50.    While Plaintiff originally agreed to an Adjournment in Contemplation of Dismissal (or an "ACD") for this docket, she was subsequently illegally and without probable cause arrested on June 20, 2017. As a result of her new arrest, the ACD on Docket No. CR-017378-17QN was withdrawn and the case was restored to the court calendar.

51.     At her May 2, 2017 arraignment the Criminal Court issued a Temporary Order of Protection which directed Ms. Davis to stay away from Shawn Davis, but permitted incidental contact at her home.

52.     The Order of Protection against Ms. Davis specifically allowed for incidental contact at her home, since she lived in the same building as her uncle.  This practical necessity was memorialized in large writing by the Judge on the middle right side of the Order of Protection.

53.     On or about June 20, 2017, Plaintiff, Charmaine Davis, was present at her residence 88-37 211th Street, County of Queens, State of New York.

54.     Thereafter, on June 20, 2017 Defendant GRUBERT, was conducting a "home check" and arrested Ms. Davis for simply being present at 88-37 211th Street inside her portion of the residence.

55.     Plaintiff was not engaged in any illegal or unlawful activity and attempted to explain to GRUBERT that the Order of Protection was limited, in that it allowed Plaintiff to return to her residence and permitted any incidental contact with her uncle in connection with this limitation.

56.     Ms. Davis told Defendant GRUBERT that she was in her own home, that the Order of Protection specifically permitted her to be in her home, and that the Order of Protection is limited..

57.     Plaintiff showed Defendant GRUBERT the order of protection that did, in fact, say it was limited, and corroborated Plaintiff's statements to Officer.

58.     Plaintiff, who had committed no wrongdoing, steadfastly denied wrongdoing.

-8-

59.     Nevertheless Defendant, GRUBERT arrested Ms. Davis for the crime of Penal Law 215.50-3 – Criminal Contempt in the Second Degree.

60.     Ms. Davis was thereafter arraigned in Criminal Court of the City of New York, Queens County on or about June 21, 2017 under Docket No. CR-025143-17QN, wherein she was charged with violating Penal Law 215.50-3 Criminal Contempt in the Second Degree.

61.     Defendant GRUBERT signed the criminal court complaint, thereby swearing to the veracity of its allegations, under penalty of perjury.

62.     At her June 21, 2017 arraignment the Criminal Court issued a Temporary Order of Protection which directed, among other things, Ms. Davis to stay away from Shawn Davis, but again permitted incidental contact in the two family house.

63.     The criminal case under Docket No. CR-025143-17QN against her was dismissed under CPL 170.30, on December 5, 2017.

64.     On July 13, 2017, Plaintiff was inside her residence at 88-37 211th Street when her uncle confronted and began threatening her younger brother outside the residence.

65.     At that time Ms. Charmaine Davis called the police and requested assistance.

66.     She also informed them that her uncle was threatening her brother.

67.     Police responded and after arriving at the residence arrested Ms. Davis again for Penal Law 215.50-3 – Criminal Contempt in the Second Degree.

68.      Plaintiff, who had committed no wrongdoing, steadfastly denied wrongdoing yet again and attempted to explain to the officers that the Order of Protection allowed her to be present in the residence.  Further, she told responding Officers, as she had told every officer at every incident, that her uncle Shawn Davis has several cameras around the front side and

back side of the property. If the Officers just view the cameras they will see the veracity of her statement.

69.     Many of the Officers who responded to this incident had responded to prior incidents in the home. Each time the Officers accepted Mr. Davis's false allegations as truthful and rejected Plaintiff's statements only because they believed she was "crazy". Each time they believed they had authority to take her into custody, both according to NYPD custom and the authority enumerated by Patrol Guide 221-13, which explicitly gives authority to officers to take a mentally ill person into custody, even if they are not a threat to themselves or anyone else, and are otherwise cooperative.

70.     Upon information and belief, Defendant ALLEN, arrested or participated in arresting and/or detaining Ms. Davis on July 13, 2017.

71.     Ms. Davis was thereafter arraigned in Criminal Court of the City of New York, Queens County on or about July 14, 2017 under Docket No. CR-028382-17QN, wherein she was charged with violating Penal Law 215.50-3 Criminal Contempt in the Second Degree.

72.     Defendant ALLEN signed the criminal court complaint, thereby swearing to the veracity of its allegations, under penalty of perjury.

73.     At her July 14, 2017 arraignment, the Criminal Court again issued a Temporary Order of Protection.  This order did not permit any contact.  As a result Plaintiff was forbidden to return to her home, except for a 9:00 a.m. to 9:00 p.m. access order.

74.     When 17 year old minor Plaintiff asked the court staff what she should do, she was given a list of shelters where she could stay.

75.     Plaintiff, who was no longer permitted to go home, was given a sheet of paper with a list of shelters  where she could apply for housing.

-10-

76.     Plaintiff Charmaine Davis, a teenage girl, who had always taken responsibility for maintaining a home for her mother and brother, now, because of the City of New York's improper training, or lack of training, and Defendant Officers' illegal actions, and their deliberate indifference to her rights, which is conscience shocking, was not permitted to go home.

77.     Plaintiff Charmaine Davis could not believe what happened to her.  Officers, even when presented with evidence of her innocence and proof that she had not violated any order of protection, arrested her.   On one occasion when nobody had called the police, and even though the Court gave her permission to be in her residence, and specifically excluded her residence from the Order of Protection, she was still arrested by Defendant Officers for violating the Order of Protection.  She suffered emotional distress and trauma as a result.

78.     Due to the Orders of Protection, which were the result of the multiple wrongful arrests of Defendant Officers illegal actions and The City of New York's improper training and lack of training of its Officers, as enumerated in its Patrol Guide, Plaintiff had now been arrested three times, and had been issued a full order or protection.

79.     Plaintiff was too scared to take any action or request that anyone go back to her house and retrieve her things.  She had no clothes or personal items, and was homeless for several days.  Finally on or about (date), after several desperate days, she asked her boyfriend to go to her home, that she was not permitted to be in, and retrieve some of her belongings.

80.     While he was there, Shawn Davis called the police to report that he had seen Plaintiff's boyfriend present inside 88-37 211th Street.

81.     There was no order of protection against Plaintiff's boyfriend.  That is why he had gone to pick up Ms. Davis' belongings.

82.     When the police arrived Ms. Davis was not present.

83.     Ms. Davis denies being present at the location at any time on July 19, 2017.

84.     The incident was assigned to Defendant CAPUTO to investigate.

85.     On August 6, 2017. Ms. Davis was yet again arrested for Penal Law 215.50-3 Criminal Contempt in the Second Degree by Defendant CAPUTO.

86.     Ms. Davis was thereafter arraigned in Criminal Court of the City of New York, Queens County on or about August 6, 2017 under Docket No. CR-031858-17QN, wherein she was charged with violating Penal Law 215.50-3 Criminal Contempt in the Second Degree.

87.     Defendant CAPUTO signed the criminal court complaint, thereby swearing to the veracity of its allegations under penalty of perjury.

88.     On December 5, 2017, the charges against her under Docket No. CR-028382-17QN were dismissed under CPL 170.30, and sealed.

89.     Defendant Officers, arrested minor Plaintiff in a clear domestic violence incident, where she was the child, and she was the female,  because they believed she was an EDP. In fact, there was never even any allegation made by Shawn Davis that Plaintiff had, in fact, hit or physically attacked him in any way.

90.     NYPD Defendant Officers discriminated against Ms. Davis when they learned her mental diagnosis, failed to accommodate Ms. Davis in any way, antagonized her, wrongfully perceived her as a threat, and they ignored exculpatory evidence that she had committed no wrong doing.

91.     NYPD Officers, through the training and policy of New York City, are permitted to take people who are mentally ill, (or as they are referred to- Emotionally Disturbed People

"EDPs") into custody, even if they are committing no crime AND are not a threat to anyone or to themselves.

92.      Defendants OFFICERS signed the criminal court complaint, thereby swearing to the veracity of its allegations, under penalty of perjury, despite knowing that there was no truth to those allegations whatsoever, that the allegations against Plaintiffs were false and completely fabricated, that there was never any legal basis to have detained or arrested Plaintiffs, and that there was no legal basis to prosecute her.

93.      There was no probable cause that Plaintiff had committed any of these crimes or any other offense.

94.      All Defendants agreed, cooperated, participated, and conspired with their co-Defendants herein to assist in and effectuate Plaintiffs' unlawful arrest, excessive force, and malicious abuse of process for crimes Officers knew that they did not commit, and in so doing deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

95.      Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to Plaintiff's constitutional and civil rights.

96.      As Plaintiff did not commit or aid/abet in the commission of any of the offenses with which she was charged, she pleaded not guilty to all counts, and each and every one of her four cases explained above, under Dockets Nos. CR-017378-17QN, CR-028382-17QN, CR-025143-17QN, and Docket No. CR-031858-17QN were dismissed.

97.     All Defendants acted in concert to lodge these false allegations against Plaintiff Davis and initiate a prosecution against her for offenses they knew she did not commit.

98.     As a result of the foregoing, Plaintiff sustained, *inter alia*, deprivation of her constitutional rights, loss of enjoyment of life, loss of liberty, loss of basic, fundamental human contact, loss of natural contact with significant others, loss of natural contact with their families, loss of the natural family role they played within their family as, daughter, and sister; physical injuries; personal injuries; emotional injuries, loss of income, loss of employment seniority; loss of employment and business experience; loss of benefits; loss of retirement pensions and savings; loss of economic opportunity; pain and suffering; severe mental anguish, emotional distress, fear and lack of privacy, all necessitating psychiatric or therapeutic counseling; inadequate medical care; humiliation, indignities and embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; restrictions on or total deprivations of all personal freedoms; liberties and entitlements, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, hobbies, religious fulfillment, personal fulfillment, sexual activity, family relations, marital relations, reading, movies, travel, driving, enjoyment, and expression. Furthermore, as a direct result of her unjust conviction and imprisonment, many of the effects of these disabilities and impairments continue to plague Plaintiff to this day, and will continue to plague Plaintiffs for the rest of their lives.

## FIRST CLAIM FOR RELIEF
## FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983 AND
## THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION

99.     The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

100.     Plaintiff was subjected to an illegal, improper and false arrest by Defendants for the May 1, June 20, July 13, and August 6, 2017 arrests, and was taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

101.     As a direct and proximate result of the foregoing, Plaintiff was placed in substantial and prolonged fear for her safety, her liberty was restricted for an extended period of time, she was subjected to handcuffs and other physical restraints, without probable cause or other lawful justification, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and suffered and will continue to suffer injury and damages as a result, including, inter alia, physical and mental pain and suffering, and mental anguish.

## SECOND CLAIM FOR RELIEF
### EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION

102.     The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103.     The level of force employed by Defendants against Plaintiff on the May 1, 2017 arrest was objectively unreasonable and violated Plaintiff's constitutional rights.

104.     As a result of the aforementioned conduct of the Defendants, Plaintiff was subjected to excessive force and sustained physical and emotional injuries.

## THIRD CLAIM FOR RELIEF
### MALICIOUS PROSECUTION IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION

105.    The Plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

106.    Defendants misrepresented and falsified evidence before the District Attorney for charges against Plaintiff Davis.

107.    Defendants did not make a complete and full statement of facts to the District Attorney, and withheld exculpatory evidence from the District Attorney for charges against Plaintiff Davis.

108.    Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff Davis for charges against Plaintiff.

109.    Defendants lacked probable cause to continue criminal proceedings against Plaintiff for the crimes she was accused.

110.    Defendants acted with malice in continuing criminal proceedings against plaintiff.

111.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

112.    Notwithstanding the perjurious and fraudulent conduct of the Defendants, the criminal proceedings against plaintiff were terminated in Plaintiff Davis' favor, in that they were dismissed on the applications of the District Attorney's Office.

**FOURTH CLAIM FOR RELIEF**
**STATE CREATED DANGER IN VIOLATION OF 42 U.S.C. § 1983**

113.    The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

114.     The conduct of Defendants as heretofore emboldened Shawn Davis to call and make baseless complaints against Plaintiff knowing she would be arrested.

115.     The Defendant Officers repeated sustained inaction towards Shawn Davis, in the face of violence they had witnessed and had been relayed to them by female and then minor Plaintiff, her 9 year old brother, her mother, and her boyfriend, rose to the level of Officers affirmatively condoning of the violence.

116.     Defendants acted with deliberate indifference towards a minor whose older uncle was abusive towards Plaintiff and her brother. That indifference shocks the conscience.

117.     As a direct and proximate result of the misconduct and abuse of authority described above, Plaintiff has suffered and will continue to suffer injury and damages, including, inter alia, physical and mental pain and suffering, and mental anguish.

**FIFTH CLAIM FOR RELIEF**
**FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C.§ 1983**

118.     The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

119.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

120.     The individual Defendants failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights incurred by the use of excessive force against her, her false arrest, and unlawful and excessive detention, despite having had a realistic opportunity to do so.

121.     As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

-17-

## SIXTH CLAIM FOR RELIEF
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1981 AND 1983

122.     The Plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

123.     By their conduct in failing to remedy the wrongs committed by employees of THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline employees of THE CITY OF NEW YORK under their supervision; and in directing employees under their supervision, Defendants, acting under the color of state law and in their individual and official capacities and within the scope of their employment, caused damage and injury in violation of Plaintiffs' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its Fourth, Fifth, Sixth, and Fourteenth Amendments.

124.     As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM FOR RELIEF
## VIOLATION OF TITLE II of the AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131 et seq.)

125.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

126.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §

-18-

12101(a)(2). The mentally ill are being segregated and isolated in jails and prisons for the crime of being mentally ill.

127.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(l) (2).

128.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, ...be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A person who is not a harm to others and themselves, cannot be arrested and discriminated against because society fears them based on their disability.

129.     At all times relevant to this action, Defendants were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

130.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

131.     Through the acts and omissions of Defendants and their agents and employees described herein, Defendants have subjected Plaintiff to discrimination on the basis of disability in violation of Title II of the ADA by failing to provide her communication and space that is as effective as communication provided to the general public during the course of law enforcement interactions, and by wrongfully thinking her mental illness, specifically the symptoms of her mental disability, make her a criminal or dangerous person.  Plaintiff

was not reasonably accommodated from the time Defendant Officers knew she had a mental illness, and so even when she was doing nothing, and no one was complaining about her, she was arrested, transported; booked; and/or otherwise in Defendants' custody.

130.    Plaintiff is informed, believes, and thereon alleges that defendants and their agents and employees could have reasonably provided her with one or more of the following aids and services in order to effectively communicate with her:

a. Officers knowing that Ms. Davis was diagnosed with a mental health issue, could have called one of the over 3,000 Crisis Intervention Team trained NYPD Officers to respond to the scene.

 b.  Officers should not have discriminated against Plaintiff, and assumed she was in the wrong because she was "crazy",

c.  Officers should not have declined to take her complaint due to her mental illness

d.   Officers could have defused the situations using the myriad of tactics both based on common sense or in their training about defusing situations,

 131.  Plaintiff is informed, believes, and thereon alleges that Defendants and their agents and employees have failed and continue to fail to:

a.       Adopt and enforce additional procedures and services to communicate effectively with individuals who are mentally ill by creating a policy that would require Officers to call onto the scene a Crisis Intervention Team, that many other Police Departments have, where specially trained Officers who know how to defuse and properly accommodate mentally ill persons so as to limit harm to themselves, the public and other officers, are called in to accommodate such individuals.

b.      Train and supervise NYPD Officers and employees to communicate effectively

with individuals who are mentally ill; and

c.      Train and supervise NYPD Officers regarding the culture of persons who are

mentally ill, and the behaviors of those who are mentally ill.

132.  Because defendants' discriminatory conduct is ongoing, declaratory and injunctive

relief are appropriate remedies.

### EIGHTH CLAIM FOR RELIEF
### VIOLATION OF SECTION 504 of the REHABILITATION ACT of 1973 (29 U.S.C. § 794)

133.     Plaintiffs incorporate by reference each and every allegation contained in the

foregoing paragraphs.

134.  Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o

otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits, or be subjected to discrimination

under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

135.     Plaintiff was at all times relevant herein a qualified individual with disabilities within

the meaning of the Rehabilitation Act because she has mental and physical impairments that

substantially limits one or more of her major life activities. See 29 U.S.C. § 705(20)(B).

136.     At all times relevant to this action Defendants were recipients of federal funding

within the meaning of the Rehabilitation Act.

137. Through their acts and omissions described herein, Defendants have violated the

Rehabilitation Act by excluding Plaintiff from participation in, by denying her the benefits of,

and subjecting her to discrimination in the benefits and services Defendants provide to the

general public

-21-

**NINTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

138.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

139.  The Defendant City of New York,  have recklessly and with deliberate indifference failed to provide adequate training and standards and policies and practices for its police Officers where, in the context of interaction with mentally ill/emotionally disturbed individuals Officer are not trained in how to interact with such individuals, and when they are trained, and do not interact according to such standards, their behavior is not corrected, they can continue to discriminate against such individuals without fear of reprisal.

140.  The need for more or different training of Officers is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the municipal policy makers have been deliberately indifferent to the need.  Policymakers know to a moral certainty that NYPD Officers will confront a situation similar to Ms. Davis', namely, interacting with an EDP/mentally ill person; second, the situation is amenable to training and supervision (as has been proven by the use of Crisis Intervention Teams in many Police Departments) and there is a history of employees mishandling the situation; and third, where the wrong or difficult choice by an ill-trained employee will frequently cause the deprivation of a citizen's constitutional or statutory rights.

141.  Furthermore, the City of New York, has in its New York Police Department Patrol Guide the Unconstitutional Policy 216-05, which in June 2016 was changed to 221-13, which permits the arrest of any and all mentally ill and emotional disturbed individuals, even

those who are not a harm to themselves or others.  It is unconstitutional, not only, in its

application, but on its very face.  In fact, Policy 216-05 states, "If the EDP is unarmed, not

violent, and willing to leave voluntarily, a uniformed member of the service may take such

person into custody. " There is no logical, ethical, or legal justification for why Policy 221-13

allows such a broad stroke of Police authority, even more importantly, how such a

discriminatory policy against a specific group of disabled persons is permitted and

unquestioned.

142.    Furthermore, Policy 221-13 requires a host of practices and policies each of

which is discriminatory, each of which not only do not permit reasonable accommodations for

the EDP, but escalate the risk of harm to the EDP. An example is the deployment of an

Emergency Service Unit (ESU).

143.    Finally, The City of New York, has a custom or policy or practice, of rather

than de-escalating situations where there are mentally disabled persons involved, arresting the

mentally disabled person, even where there is no other wrong doing, and then charging the

person with resisting arrest and disorderly conduct, to justify the use of excessive force.

144.    Defendants did not reasonably accommodate Plaintiff, as they could have,in

myriad of ways. Defendants ignored Plaintiff's legitimate claims against her uncle, and also

discriminated against her by failing to address her allegations against him only because she was

an individual diagnosed with a mental illness.  Finally, NYPD Officers used the worst tactics

possible, and escalated the situation by arresting Plaintiff because they knew she was mentally

ill.

145.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm

to her constitutional rights unless Defendants are enjoined from continuing NYPD's policy,

practice, and/or custom of unconstitutional and discriminatory treatment of the mentally ill and the policies and/or customs that have directly and proximately caused such constitutional and discriminatory abuses.

146.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

147.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in her health and person. She suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

148. The above mentioned individually named and Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

**NINTH CLAIM AGAINST ALL DEFENDANTS**
**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE NEW YORK STATE CONSTITUTION**

149.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

150.    Defendants, acting in concert and within the scope of their employment and authority, violated plaintiff's right to be free of unreasonable and unlawful searches and seizures under Article I, § 12 of the New York State Constitution.

151.    Defendants, acting in concert and within the scope of their employment and authority, consciously disregarded known and excessive risks to plaintiff's liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain an unjust conviction against her.

152.    Upon information and belief, this included a course of conduct and pattern of behavior whereby defendants, inter alia, created and fabricated evidence to create the appearance of probable cause to believe that plaintiff had committed one or more offenses, intentionally and maliciously concealed material exculpatory evidence, and unduly influenced the statements and testimony of witnesses.

153.    That by virtue of the aforementioned acts, defendants deprived plaintiff of her liberty and property without due process of law, in contravention of Article I, § 6 of the New York State Constitution.

154.    Defendant City is also liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

132.    **WHEREFORE,** Plaintiff prays the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

 c.  Relief, including but not limited to, declaring 221-13 as unconstitutional and discriminatory, either as a policy, or as it is applied as a practice/custom, and injunctive relief enjoining City from Policy 221-13, and requiring the City to institute and implement improved policies like the use of specially trained Crisis Intervention Teams in dealings with mentally ill/EDPs.

d.  The convening and empaneling of a jury to consider the merits of the claims herein;

e.  Costs and interest and attorney's fees;

f.   Such other and further relief as this court may deem appropriate and equitable.


Dated:          Bronx, New York
                March 19, 2019

                        Respectfully Submitted,

                        _____/s/_____
                        P. Jenny Marashi (PM0916)
                        Marashi Legal
                        930 Grand Concourse, #1E
                        Bronx, NY 10451
                        (917) 703-1742
                        Attorney for Plaintiff

-26-